## PAN AMERICAN PETROLEUM CORPORATION *v.* AMERICAN NATIONAL BANK.*

(*Nashville,* December Term, 1931.)

Opinion filed July 23, 1932.

---

*As to check as assignment, see annotation in 2 L. R. A. (N. S.), 83; 5 R. C. L., 488 et seq.; R. C. L. Perm. Supp., p. 1401 et seq.

As to time of negotiation of check as affecting one's character as a holder in due course, see annotation in 23 A. L. R., 1205.

HUME & ARMISTEAD, for plaintiff in error.

FYKE FARMER and BASS, BERRY & SIMS, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

The American National Bank of Nashville, plaintiff, sued the Pan American Petroleum Corporation, defendant, to recover upon a check drawn by it upon the Bank of Commerce & Trust Company of Memphis. The appeal is from the judgment of the circuit court against the petroleum company. The parties will be designated as in the trial court.

It is insisted for defendant that the plaintiff is not a holder in due course but took the check subject to defenses; and that the defendant was discharged from liability by failure of the bank to present the check for payment within a reasonable time after issuance.

The facts are: On August 5, 1930, the defendant issued and mailed its check for $58.41 to J. Maury Hutton, its employee, to a Nashville address. Thereafter, within the month of August, Hutton wrote the defendant that he had not received the check. Thereupon defendant notified the

Bank of Commerce & Trust Company to stop payment on the check of August 5, 1930, and on August 26th issued another check to Hutton. The checks are distinguishable only by reference to the number and date on each. Otherwise they are identical. Hutton indorsed the check of August 26th to Meyer Hotel Company at Nashville and received the money on it. The hotel company indorsed it and presented it to the teller at the main office of the American National Bank and it in turn received the money on it. That check was forwarded in regular course of business to the Bank of Commerce & Trust Company at Memphis where it was paid and charged to defendant's account. On February 11, 1931, Hutton, who kept a checking account at the Cumberland Valley Branch of the American National Bank, indorsed and deposited the check of August 5, 1930, in the branch bank. It was credited to his checking account, and in due course of business was forwarded to the Bank of Commerce & Trust Company at Memphis and reached there on February 11th.

Pursuant to the notice given in August, 1930, by the drawer to stop payment on the check of August 5th, the bank at Memphis protested the check issued August 5th and it was returned to the plaintiff unpaid. In the meantime, Hutton, by checks on his account, reduced his balance to $2.73 and when the protest fee of $2.50 was charged against this balance only 23c were left. Thereupon the plaintiff sued to recover upon the check issued August 5, 1930, indorsed to it, and presented for payment February 11, 1931.

Upon these facts the defendant insists that it is not liable because the check was not presented within a rea-

sonable time after it was issued. We quote from the Negotiable Instruments Law, chapter 94, Acts of 1899, as follows:

"Sec. 53. Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course.

"Sec. 71. Where an instrument is payable on demand, presentment must be made within a reasonable time after its issue, except that in case of a bill of exchange, presentment for payment will be sufficient, if made within a reasonable time after the last negotiation thereof.

"Sec. 185. A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to checks.

"Sec. 186. A check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

While as against the depository, a check does not constitute an assignment of the drawer's fund (*Bank* v. *Swift,* 134 Tenn., 175), as between the parties it operates, as of the date of presentment for payment, as an assurance of a sufficiency of the drawer's fund on deposit to pay the amount of the check.

Since the defense here rests upon failure to present the check for payment within a reasonable time, section 1 of the Negotiable Instruments Law is pertinent. It provides that "in determining what is a reasonable time, regard is to be had to the nature of the instrument, the usage of trade or business with respect to such instrument, and the facts of the particular case."

In this connection must be also considered the provision of section 186, above quoted, to the effect that delay in presentment will result in the discharge of the drawer to the extent only of the loss caused by the delay.

Having issued and made possible the negotiation of the two checks, the defendant is not in position to avoid liability as against plaintiff. Such loss as defendant may suffer would not result primarily from delay in presenting the check, but from the fact that it improvidently issued two negotiable checks to its employee and sent them to him at Nashville where he could negotiate each of them.

The facts bring the case within the rule applied in *Anderson* v. *Elem* (Kan.), 23 A. L. R., 1202, from which we quote:

"Should the payee delay presentment, and should the bank fail, the loss falls on the payee. Should the drawer have no funds on deposit to meet the check, or should he withdraw his deposit before presentment, he can suffer no injury by delay in presentment, and is not discharged. . . . Stopping payment is equivalent to withdrawing the deposit. The drawer of a check is principal debtor, the person primarily liable, and, unless he suffers loss by delay, is not discharged if the check be presented within the time prescribed by the Statute of Limitations. Negotiation of a check as a bill of exchange is one of the privileges of the payee, and the drawer does not suffer loss, within the meaning of the Negotiable Instruments Act, by the fact that the payee chooses to transfer the paper, instead of presenting it for payment himself. In this instance, the defendant did not suffer loss because of delay in presenting the check."

In determining the question presented, it is not necessary to go so far as the Kansas Supreme Court and hold that the person primarily liable is not discharged if the check be presented within the period of the statute of limitations. It is sufficient to say that there was no delay of presentment after the last negotiation—after the payee negotiated it; and such loss as defendant may suffer resulted primarily from the improvident issuance of the check to its employee, and not from the delay.

Affirmed.